# INVESTIGATIVE DISPOSITION

| | |
|---|---|
| Case Name: | Kodjo Agblekpe v. Bunker Hill Community College |
| MCAD Docket No.: | 19BEM03315 |
| EEOC Docket No.: | 16C-2020-00352 |
| No. of Employees: | 25+ |
| Investigator: | Nicole Cocuy, Compliance Officer |
| Recommendation: | **Lack of Probable Cause** |

## Introduction

On November 27, 2019, Complainant filed a complaint against Respondent alleging unlawful discrimination based on race and color (Black) and sex (male) in violation of M.G.L. c. 151B, § 4(1) and Title VII of the Civil Rights Act, as amended.

## Complainant's Allegations

Complainant alleges as follows. Complainant identifies his race and color as Black. On April 11, 2019, Complainant applied for the Special Program Coordinator: Food Pantry ("DISH Coordinator") position with Respondent. On April 30, 2019, Respondent interviewed Complainant for the DISH Coordinator position. On May 1, 2019, Dean of Students Julie Elkins (White female) invited Complainant to meet with her and Assistant Dean Will J. Cribby (White male) on May 8, 2019. On May 8, 2019, Complainant met with Mr. Cribby and Ms. Elkins to discuss the job duties and responsibilities for the DISH Coordinator position. On May 28, 2019, Complainant received a letter from Assistant Vice President of Human Resources Molly Ambrose stating that Complainant was not selected for the DISH Coordinator position. In September 2019, Complainant looked at Respondent's website and discovered that Respondent hired M.H. (White female) for the DISH Coordinator position.

## Respondent's Position

Respondent asserts as follows. On or about April 1, 2019, Respondent posted a notice for the new DISH Coordinator position. The DISH Coordinator position's main function is to develop and manage processes, procedures, and programs for the new on-campus food pantry, the DISH. Complainant applied for the DISH Coordinator position on April 11, 2019. Respondent selected five candidates for interviews. On April 30, 2019, Respondent interviewed Complainant for the DISH Coordinator position. Of the five interviewed candidates, Respondent found two candidates, Complainant and M.H., to be qualified for the position. Ms. Elkins and Vice-President/Provost of Academic Affairs and Student Services James Caniff both recommended M.H. for the position over Complainant due to her experience developing and managing food pantries at two higher education institutions.

Kodjo Agblekpe v. Bunker Hill Community College
19BEM03315                                                         1

Complainant did not have experience in creating or developing food pantries in a higher education setting.

## Summary of Investigation and Analysis

*Failure to Hire – Race, color, and sex*

In order to establish a *prima facie* case for failure to promote, Complainant must show: (1) he is a member of the protected classes; (2) he applied for a position for which the employer was seeking applicants; (3) Complainant was minimally qualified for the position; and (4) Complainant was rejected for the position and Respondent hired someone not in Complainant's protected class, or continued to seek to hire or promote individuals with qualifications similar to Complainant's. If Complainant establishes the *prima facie* case, Respondent may show that there was a legitimate non-discriminatory reason for the failure to promote or hire Complainant. If Respondent succeeds in offering such reasons, Complainant must then show that the proffered reason is a pretext for discrimination.

Complainant is a member of protected classes by virtue of his race, color, and sex. It is undisputed that Complainant applied for the open DISH Coordinator position on April 11, 2019. It is undisputed that Complainant was minimally qualified for the position. It is undisputed that Respondent rejected Complainant for the DISH Coordinator position on May 28, 2019 and selected M.H. (White female) for the position.

However, investigation reveals sufficient evidence in support of Respondent's legitimate non-discriminatory reasons for its decision to select Ms. Hansen over Complainant for the DISH Coordinator position – her relevant experience. As revealed in the DISH Coordinator job posting, the DISH Coordinator is responsible for establishing and coordinating "all processes, procedures, and programs for the opening and ongoing operation of the new pantry." M.H.'s cover letter and resume reveal that she not only met the minimum requirements for the position, but she also co-founded food pantries at two higher education institutions. While Complainant's resume and cover letter reveal that Complainant also met the minimum requirements for the position, including more than a decade of experience in the food industry, M.H.'s experience is more specifically tailored to the DISH Coordinator position. On May 8, 2019, Ms. Elkins submitted her recommendation for M.H.'s hire, which emphasized M.H.'s experience "working with undergraduate, graduate students, professionals, faculty, and administration regarding assessment, fundraising, and administration of the food pantry." As highlighted in interview notes compiled by the hiring committee, M.H. was "the only candidate interviewed who has not only operated student food pantries, but has created them from the ground up." It is undisputed that, unlike M.H., Complainant does not have experience managing a food pantry.

Investigation reveals insufficient evidence of pretext. Between November 1, 2018 and November 4, 2019, Respondent hired 64 employees, including 13 employees who

identified their race as Black and 25 male employees. As such, insufficient evidence to support an inference of pretext exists.

In reviewing the totality of the evidence, investigation reveals insufficient evidence upon which a fact finder could form a reasonable belief that it is more probable than not that Respondent committed an unlawful practice in violation of M.G.L. c. 151B.

Conclusion

A finding of Lack of Probable Cause is recommended for Complainant's claims of discrimination based on race, color, and sex against Respondent.

| /s/ Nicole Cocuy | /s/ Pamela Myers |
|---|---|
| Nicole Cocuy | Pamela Myers |
| Investigator | Attorney Advisor |

Disposition

Pursuant to section 5 of M.G.L. c. 151B, and in conformity with the foregoing findings, I have this day determined that a **Lack of Probable Cause** is being rendered on this case. Complainant will be afforded the opportunity to appeal this decision.

| _/s/ Neldy Jean-Francois_ | 7/13/2020 |
|---|---|
| Neldy Jean-Francois | Date |
| Investigating Commissioner | |

MAILED ON
7/27/2020

**THE COMMONWEALTH OF MASSACHUSETTS**
**COMMISSION AGAINST DISCRIMINATION**
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

## - DISMISSAL and NOTICE of RIGHT TO APPEAL -

| To: | Kodjo Agblekpe<br>42 Hollander Street<br>Boston, MA 02121 | Case: Kodjo Agblekpe v. Bunker Hill Community College<br>MCAD Docket Number: 19BEM03315<br>EEOC Number: 16C-2020-00352<br>Investigator: Nicole Cocuy |
|---|---|---|

Your complaint has been dismissed as follows:

[ ] Pursuant to 804 CMR 1.08(1)(c) (2020), the Commission lacks jurisdiction over the parties or the subject matter of the complaint.

[X] Pursuant to 804 CMR 1.08(1)(f)(2) (2020), there is insufficient evidence to support a determination of probable cause to credit the allegations of the complaint with respect to all claims in the complaint.

[ ] Pursuant to 804 CMR 1.05(2) (2020), the Commission has determined after a preliminary review of the complaint that further investigation will not serve the public interest.

## - NOTICE of RIGHT TO APPEAL -

Pursuant to 804 CMR 1.08(4)(b) (2020), you may appeal to the Commission within 10 days after receipt of this notice. You or your attorney must appeal in writing to the Clerk's Office. **Attention: Nancy To.**

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

_Neldy Jean-Francois_         7/13/2020
Neldy Jean-Francois           Date
Investigating Commissioner

Cc:
Evan C. Bjorklund, Esq.
Massachusetts Community Colleges

**THE COMMONWEALTH OF MASSACHUSETTS**
**COMMISSION AGAINST DISCRIMINATION**
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

Office of the General Counsel
c/o Middlesex Community College
Springs Road, Building 2
Bedford, MA 01730

**KODJO AGBLEKPE**
42 Hollander Street, Boston, MA 02121 · 617-372-3084 · Agblekpe@gmail.com

August 11, 2020

**SENT VIA FAX and CERTIFIED MAIL RETURN RECEIPT**
U.S. Equal Employment Opportunity Commission
Boston Area Office-JFK Federal Building
15 New Sudbury Street, Room 475
Boston, MA 02203-0506
United States.
Attn: Director Feng K. An

**RE:   Request for Substantial Weight Review**
    **MCAD Docket Number: 19BEM03315**
    **EEOC/HUD Number: 16C-2020-00352**

Dear Feng K. An:


I, Kodjo Agblekpe disagree with the recent decision rendered by MCAD. I would like to request a substantial weight review of the above referenced case numbers on the grounds that the state incorrectly analyzed the evidence presented. Also, I have provided the following new information with this letter.

- Position Statement addressed to EEOC
- MCAD Dismissal letter
- Guide Star Profile for University of Arizona Campus Pantry
- Bunker Hill Community College DISH Coordinator resume for Molly Hansen
- Bunker Hill Community College Certification and Authorization statement


Thank you in advance for careful review of this matter.

Respectfully submitted,

*Kodjo Agblekpe*
Kodjo Agblekpe
Complainant

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

| | |
|---|---|
| KODJO AGBLEKPE, )<br>)<br>Complainant, )<br>)<br>v. )<br>)<br>BUNKER HILL )<br>COMMUNITY COLLEGE )<br>)<br>Respondent. )<br>) | MCAD Docket Number: 19BEM03315<br>EEOC Number: 16C-2020-00352 |

## KODJO AGBLEKPE's POSITION STATEMENT THAT THERE IS SUFFICIENT EVIDENCE TO SUPPORT A DETERMINATION OF PROBABLE CAUSE

**I.    MCAD Investigation Revealed Sufficient Evidence of Pretext.**

Pursuant to 804 CMR § 1.08(1)(f)(2) et seq., Complainant Kodjo Agblekpe (Mr. Agblekpe-Black Male Boston Resident) submits this Position Statement against Respondent Bunker Hill Community College ("BHCC") to allege the charge of unlawful discrimination based on race, color, religion, sex, and national origin in violation of MGL. C. 151B, § 4(1) and Title VII of the Civil Rights Act of 1964, as amended.

Based on the following sequence of events, Miss. Hansen's (White female, out-of-state applicant, hired by BHCC) resume was forwarded to the hiring committee on May 8, 2019 or most likely she applied for this position after the job posting closed and rightfully should not have been considered for the position after the April 11, 2019 cut-off date. Therefore, there seems to be a question of veracity regarding when Miss Hansen was introduced into BHCC's hiring process for this, DISH Coordinator job posting.

Based on MCAD Investigator Nicole Cocuy's (Ms. Cocuy's) investigation, we have deduced two conflicting statements that raise concern. BHCC would like us to accept, (as truth) that after conducting seven interviews, as early as Tuesday April 30, 2019, BHCC was aware that both Mr. Agblekpe (a Boston Resident) and Miss Hansen (the Out-of-State applicant) were the finalists who were deemed to be qualified for this position. However, the following day, Wednesday May 1, 2019 Dean of Students Julie Elkins (Ms. Elkins-White Female) eagerly contacted Mr. Agblekpe by phone to schedule a follow up informational meeting on Wednesday May 8, 2019 to discuss next hiring steps; proposed job duties and responsibilities of the DISH Coordinator position that Ms. Elkins and Asst. Dean Will J. Cribby (Mr. Cribby-White Male) essentially promised to Mr. Agblekpe.

Ironically, also on Wednesday May 8 is when Ms. Elkin's hired Miss Hansen for this specific reason "relevant experience" that distinguished Miss Hansen from Mr. Agblekpe. **Relevant experience is relative as the job posting under "Required Qualifications" there is no mention that the applicant must have prior experience working in a food pantry.** This information, if substantially compelling, should have been "highlighted on April 30, 2019 in the interview notes compiled by the interview committee". On April 30, 2019 if Miss Hansen's hiring information remained the same, then how is Mr. Agblekpe named as a candidate that directly competes with Miss Hansen.

On April 30, 2019, if her "relevant experience" was so substantially compelling, the hiring committee could have assessed that from an initial review of Miss Hansen and Mr. Agblekpe's resume during the first round of interviews. Therefore, it is during the first round of interviews that Miss Hansen would have been the undisputable final candidate named in favor of the DISH Coordinator position, instead of being named as a finalist alongside Mr. Agblekpe.

2

However, on May 8, 2019 Ms. Elkins and Mr. Cribby offered Mr. Agblekpe promises of employment. If this were a true statement, that Miss Hansen was, hired over Mr. Agblekpe then Ms. Elkins and Mr. Cribby would have conducted the follow up informational meeting with Miss Hansen and not Mr. Agblekpe.

Presumably, the natural flow of events show that the hiring committee (Ms. Elkins and Mr. Cribby, among others) truly intended to submit a recommendation for hire on behalf of Mr. Agblekpe following his information meeting on May 8th, but on the same day or at a later date an influential person (White person) known to BHCC may have been unfairly recommended Miss Hansen-White female, out-of-state applicant, hired by BHCC) into the hiring process which caused Mr. Agblekpe -Black Male Boston Resident ) to be passed over for a position he was rightfully qualified. Especially, when **relevant experience is relative as the job posting under "Required Qualifications" there is no mention that the applicant must have prior experience working in a food pantry.**

Typically, when an out-of-state applicant is selected for employment in another state their credentials and qualifications are most likely exemplary and usually supersede the qualifications of the other applicants (who are residents of that state) that apply. Understandably, employers naturally commit to a longer hiring process when they decide to choose an applicant from out-of-state. These applicants present with another layer of complexity when conducting background checks as well as when they decide to accept the job and must situate i.e., moving costs, searching for a new place to live, acclimating to a new area, transfer of all identification for themselves and family etc.

Accordingly, the Equal Employment Opportunity Commission (EEOC) should find Sufficient Probable Cause to support Complainant's charge of unlawful discrimination based on race, color, religion, sex, and national origin.

**II.   MCAD Investigation Revealed that BHCC's Final Choice for the DISH Coordinator position, Miss Hansen Unequivocally Misrepresented her Professional Work Experience and Engaged in Resume Fraud.**

Within the food industry, Mr. Agblekpe has a more extensive work and education history. Culinary arts and food service skills are considered transferrable and is equally suitable for the DISH Coordinator position. Likewise, Ms. Elkins and Mr. Cribby also agree which is why they arranged a second meeting with Mr. Agblekpe to discuss the specifics around his preliminary hire.

Although Miss Hansen has minimal experience for the DISH Coordinator position, the short time in which she acquired it while a full-time student at University of Arizona (UA) is not ideal. In May 2019, five months into her internship at the UA Food Pantry, Miss Hansen is also promoted in May 2019 to a salaried full-time career that has typical responsibilities and obligations would require at least a Baccalaureate Degree and years of management and supervision experience, whose hours could surpass 40 or more hours per week.

The federal work study program is offered throughout the United States at all accredited educational institutions, such as the UA. Federal work study guidelines prevent the UA from hiring a student (during their academic four-year course of study) as a full-time employee. During a semester, students are not permitted to work more than 20 hours per week. Work study is intended to be part-time work. Therefore, UA is not allowed to consider any student with a full course load of study as the most qualified candidate. This full-time work responsibility may

4

overburden the average full-time student and cause them to get low grades and dropout or quit school to work the job full-time.

Miss Hansen claim that she created, developed, and managed the UA Food Pantry. This seems to be an exaggeration or overestimation of her skills and experience. This investigation stated that "Miss Hansen got the position over Mr. Agblekpe due to her experience developing and managing food pantries at two higher education institutions." When in fact the second higher education institution mentioned is a Graduate Student Senate Food Security Committee, where Miss Hansen could not actually work in a food pantry.

As a matter of fact, at UA Miss Hansen claimed to have "created, developed and managed" this food pantry from "ground up". An online charitable website confirms that in 2015 Principal Officer David Bauer created this 501 (c)(3). Regardless, Miss Hansen stated she was a co-founder of this food pantry but as a work study you are only allowed to work no more than 20 hours weekly as a full-time student on federal work study. Ironically, her tenure at the UA Campus Pantry May 2014-May 2017 only lasted during her four academic years at UA 2013-2017.

At best, Miss Hansen's food pantry experience, during college, without a BS degree, excluding internship may be 3 years, if it was not under the federal work study financial aid program. Miss Hansen still has not been employed any place other than UA, which is matchless, against Mr. Agblekpe's 10 or more years of solid work experience in culinary, food retail/hospitality.

In conclusion, a few red flags that BHCC should have caused BHCC to investigate further was when Miss Hansen's resume stated that UA hired her as a full-time employee while she was also a full-time student at UA. Five months into her internship at the UA Campus

5

Pantry she was also hired as Director of Outreach and Internship. Also, Miss Hansen's career as Director of Outreach and Internship ended the same month she graduated from UA. Miss Hansen was also hired for this position without a Baccalaureate Degree, which the job requires. Lastly, Miss Hansen could not have set up or created the UA Food Pantry because David Bauer the Principal Officer is listed on GuideStar as creating the 501 (c)(3).

**III.     Investigation Revealed that BHCC's: Assistant Vice President of Human Resources Molly Ambrose, Dean of Students Julie Elkins, and Vice President/Provost of Academic Affairs and Student Services James Caniff are Jointly and Severally Liable for the Negligent Hiring and Retention and Failure to Conduct an Adequate and Thorough Review of Miss Hansen's References.**

BHCC's hiring committee negligently hired Miss Hansen when they failed to diligently verify the pertinent information provided on the application and resume. Hence, BHCC violated their own proper hiring guidelines that require that an Affirmative Action Officer (AAO) is hired to work closely with Human Resources to develop proper hiring guidelines and oversee that hiring process as early as the advertisement phase. As part of their job application, candidates should be required to provide proof of their credentials and any licensures for their profession. It is important for prospective employers to verify the accuracy of the information with the following two organizations:

1. The Council for Higher Education Accreditation, and
2. The U.S Department of Education

As well as requiring candidates to submit applications and verifying this information, It is important for prospective employers to thoroughly check the candidates' reference and the information contained on the applicant's resumes. Prospective employers should investigate any problematic areas on the candidates resume. For example, gaps on a candidate's employment history can indicate possible omissions and lies. Therefore, it is crucial for employers to inquire about these gaps and to confirm the responses given by the candidate in explaining these gaps.

6

BHCC's hiring committee is also liable for negligent retention when, they reasonably knew or should have known that Miss Hansen's job experience did not actually meet the qualifications listed on the job posting. Below is BHCC's Applicant's Statement of CERTIFICATION AND AUTHORIZATION that certifies that BHCC will check credentials and was supposed to deter Miss Hansen from making misleading and false statements that overstated her job experience. BHCC failed to check Miss Hansen's past employment background properly and thoroughly, especially when the MCAD investigation notified them that someone contests the hiring of Miss Hansen over Mr. Agblekpe.

"Applicant's Statement

References and Record Verification Information provided by the applicant during the hiring/applicant screening process is subject to verification by Bunker Hill Community College. BHCC and/or its agent(s) will take whatever steps deemed necessary to contact current and previous employers, individuals listed as references, other individuals, schools and/or licensing authorities to provide information and/or to verify or clarify information provided.

CERTIFICATION AND AUTHORIZATION

I have read and understand the information above. I certify that the information in this application and in any other materials provided by me is true, correct, and complete. I understand that any falsification, misrepresentation, omission or withholding of information during the hiring/screening process will result in the rejection of my application or my discharge from employment, if employed.

I authorize Bunker Hill Community College or its authorized agents/contractors to make inquiries of any persons.

By checking this box, I acknowledge that I have read, and my signature below certifies that I understand and agree with the paragraphs above.

Type Applicant Name as Signature:                                          Date: "

### IV. MCAD Investigator/Compliance Officer Nicole Cocuy's Investigation was Cursory and Failed to Recommend BHCC Best Practices to improve their Hiring Practices.

- Investigator Cocuy has breached her oath of service as she was unable to render abstract findings from her fact-finding process of the investigation. I was able to draw reasonable

7

inferences to assess the viability of Mr. Agblekpe's case based on the facts discovered during Ms. Cocuy's own investigation.

A major oversight was when Ms. Cocuy failed to recommend that BHCC become compliant with one of their own current hiring guidelines and hire an Affirmative Action Officer (AAO). BHCC cannot afford to operate without an AAO as their role is to consult with Human Resources so they can develop proper hiring guidelines. The AAO is supposed to initiate the hiring process with review and development of a recruitment plan that begins as early as the advertisement phase.

The sample group represented in the investigation was middle to upper management level positions. There are no entry level positions that appear on the list to lend a broader view of the overall hiring process. Therefore, of the 13 black males mentioned in the data none of the candidates were hired in the Food Service Department as it relates to Mr. Agblekpe's situation.

Regarding BHCC's hiring practices, Cocuy does not address whether BHCC need to implement or has an existing policy that prohibits job candidates from misrepresenting their employment credentials/experience nor does Cocuy address if the consequences for violation of this rule should be immediate termination.1 Additionally, BHCC as well as Assistant Vice President of Human Resources Molly Ambrose must be diligent to ensure that the policies and procedures used in their hiring process significantly reduce the possibility of hiring job candidates who misrepresent their credentials/experience.2

Good hiring practices can begin as early as the posting of the job announcement. If statements warning candidates not to engage in the misrepresentation of credentials were placed on the job posting candidates may be less inclined to even begin the BHCC hiring process.3

8

To get adequate information about the job candidate, it is important that every candidate be required to submit a resume and complete an application. The applications could have certification statements that the candidate acknowledges that his or her application may be rejected for providing untrue or deceptive statements.[4] Job candidates could also be required to sign an authorization and release which allows the prospective employer to confirm and examine the information provided by the candidate.[5] The disclaimer allows the employer to benefit from expeditiously releasing the applicant that dishonestly gained access to this position.

Although BHCC has a implemented a certification and authorization statement that is prompted once an applicant submits an online application, it can only take effect once the information is uncovered and the employer fails to act or assert its right based on the disclaimer listed above. Since Mr. Agblekpe contests its hiring process, BHCC can in good faith conduct a self-assessment of their own hiring policy to further avoid liability from negligent retention of Miss Hansen.

1. See Megan Oswald, Comment and Casenote, Private Employers or Private Investigators? A Comment on Negligently Hiring Applicants with Criminal Records in Ohio, 72 U. CIN. L. REV. 1771, 1788 (2004); Mark Minuti, note: Employer Liability Under the Doctrine of Negligent Hiring: Suggested Methods for Avoiding the Hiring of Dangerous Employees, 13 DEL. J. CORP. 501, 524-33 (1988).
2. Dallas Business Litigation Attorney Warns That Companies Must Guard Against Resume Fraud, JUSTICENEWSFLAS.COM, May 2, 2008, available at http://www.justicenewsflash.com/2008/05/02/dallas-businesslitigation-attorney2008050218.html (last visited on Mar. 9, 2011).
3. Here"s How to Hire Ethical Employees, VIRGINIAN-PILOT, Jan. 24, 2011 at 37.
4. See Oswald, supra note 121, at 1788; Minuti, supra note 121, at 524; Weiss v. Furniture-in the Raw, 306 N.Y.S.2d 253 (N.Y. Civ. Ct. 1999) (an employer hired an unidentified teenager off the street to help him deliver furniture to a customer without even asking the teenager's name and address).
5. Avoiding Negligent Hiring Claims in Texas, Vol. 5, Issue 3 TEX. EMP. L. LETTER, Mar. 1994

### V.  Specific Response to the Allegations

1.  Mr. Agblekpe admits that he has 12 or more relevant years of work/education experience in various capacities at several State and State Community College settings as well as Retail, and Restaurant/Hotel. Therefore, certainly Mr. Agblekpe should expect that these

9

professional skills are transferrable, so he is capable to create, develop, and manage a food pantry geared towards students at a Community College.

2. Mr. Agblekpe denies that the Serv Safe Foodservice Manager Certification is a weakness. He has had this certification since 2007 and continues to keep this requirement current and active. Although the job posting states the candidate must have the ability to obtain this certificate at least 10 days prior to start date.

3. If Miss Hansen had relevant experience, superior to and more unique than Mr. Agblekpe, how did Mr. Agblekpe and Miss Hansen ever become finalists April 30, 2019 for this DISH Coordinator position. Why did not Ms. Elkins notify Mr. Agblekpe before May 8, 2019 that he will not be selected for the position. Instead on May 8, 2019 Mr. Agblekpe has an information meeting with Ms. Elkins and Mr. Cribby regarding the open DISH position and statements were made that suggest Mr. Agblekpe will soon be hired.

4. The DISH Coordinator position list a requirement of 3 or more years of supervision experience needed to be considered a suitable candidate. Miss Hansen is weak in the supervision area. It remains questionable that in her capacity as a freshman student intern at UA that Miss Hansen could rightfully be appointed to "create, develop, manage" a department as well as supervise others.

5. Miss Hansen's work experience in the UA Campus Pantry is also questionable and weak because as a freshman at UA she could not be expected to be knowledgeable in this area to be given the chief responsibility to "create, develop, and manage" a food pantry.

6. Miss Hansen engaged in fraud and was dishonest when she over-stated her job title and duties stating on her resume that only after 5 months as an intern she is now qualified

10

and promoted to Director of Outreach and Internship. This is confirmed online that in 2015 Principal Officer David Bauer created the 501 (c)(3) on behalf of the UA Food Pantry

7. The investigation report states that Miss Hansen was recommended for the position over Mr. Agblekpe due to her experience developing and managing food pantries at two higher education institutions. In actuality, the second higher education institution Miss Hansen did not actually work at a food pantry, she sat on a Graduate Student Senate Food Security Committee.

## VI. Affirmative Defenses.

### First Affirmative Defense

The charge for adequate probable cause should be supported because BHCC discriminated against Mr. Agblekpe due to his race, color, religion, sex, and national origin.

### Second Affirmative Defense

Mr. Agblekpe suffered from a compensable harm because of any action taken by BHCC.

### Third Affirmative Defense

Any harm suffered by Mr. Agblekpe was the result of any conduct by BHCC.

### Fourth Affirmative Defense

Mr. Agblekpe has established a prima facie case of discrimination.

### Fifth Affirmative Defense

BHCC has failed to show sufficient evidence that there is a legitimate non-discriminatory reason to support their decision to hire Miss Hansen over Mr. Agblekpe for the DISH Coordinator position.

### Sixth Affirmative Defense

BHCC failed to include key components in the job posting to properly notify applicants that it was a "Required Qualification" to have past work experience in actually "creating, developing, and managing" a food pantry. Otherwise, a reasonable person can expect to substitute relevant past work experience to accomplish the specific job responsibilities listed on the job posting.

WHEREFORE, Complainant Kodjo Agblekpe pray that BHCC support his proposed charge for the EEOC to support the charge for adequate of probable cause.

BUSINESS.

By complainant,

*Kodjo Agblekpe*

MR. KODJO AGBLEKPE
42 Hollander Street
Boston, MA 02121
(617) 372-3084
Agblekpe@gmail.com

Date:   August 1, 2020

### Verification

I, __Kodjo Agblekpe__, affirm under oath under pains and penalties of perjury that I have reviewed this Position Statement and that the information contained in it is true and accurate according to the best records and information available to me.

*Kodjo Agblekpe*
Complainant Kodjo Agblekpe

### Certificate of Service

The undersigned certifies that he served the foregoing by causing a copy thereof to be delivered by first-class mail and by email to counsel for the Complainant and for the other Respondent this 1st day of August 2020.

*Kodjo Agblekpe*
Complainant Kodjo Agblekpe

12